IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JESSICA LAURIE, | ) Case No. 4:23-cv-00138-SMR-WPK |
| Plaintiff, | ) |
| | ) ORDER ON DEFENDANTS' MOTIONS |
| v. | ) FOR SUMMARY JUDGMENT |
| | ) |
| CITY OF DES MOINES, DANA WINGERT, individually and in his official capacity, THOMAS GARCIA, individual and in his official capacity, ZACHARY DUITSCHER, individually and in his official capacity, and LUKE HASTIE, individually and in his official capacity, | ) |
| Defendants. | ) |

Plaintiff Jessica Laurie filed this lawsuit against Defendants, all officers with the Des Moines Police Department ("DMPD"), alleging multiple violations of her constitutional rights when she was arrested at a gas station in 2021. Defendants are the City of Des Moines (the "City"), Iowa, Des Moines Chief of Police Dana Wingert, Officer Zachary Duitscher, Officer Luke Hastie, and Officer Thomas Garcia[1] (collectively "Defendants") move for summary judgment on all claims. For the reasons discussed herein, Defendants' Motions for Summary Judgment are GRANTED. [ECF Nos. 31, 32]. All other pending motions are MOOT. [ECF Nos. 43, 44, 45].

---

[1] Officer Garcia filed a separate Motion for Summary Judgment. [ECF No. 32]. When relevant in the discussion, the distinction will be noted.

I.      BACKGROUND

*A. Factual Background*[2]

In the early morning hours of October 14, 2021, Officer Garcia and Officer Duitscher arrived at the Kum & Go gas station on Southeast 14th Street in Des Moines where they observed a vehicle parked at a gas pump. [ECF No. 41-1 ¶¶ 5–6]. The officers ran a warrant check on the registered owner of the vehicle, Jessica Laurie, and discovered that she had an outstanding arrest warrant. [ECF No. 31-3 ¶ 2]. Officers engaged with Laurie, commanding her to step out of the car. *Id.* ¶ 3. Once she did, they confirmed her identity and that she was the owner of the vehicle. *Id.* ¶ 4. Officer Garcia handcuffed her while she denied that she had a warrant. *Id.* ¶¶ 5–6. While Officer Garcia was handcuffing Laurie, she made contact with her vehicle, which is visible on the video submitted as part of the summary judgment record. [ECF No. 41-1 ¶¶ 14–15]. Officer Hastie exited a different vehicle and stood nearby as Laurie was handcuffed before returning to his squad car for the remainder of the arrest. *Id.* ¶ 16. After handcuffing Laurie, Officer Garcia escorted her to his patrol vehicle. *Id.* ¶ 23. The parties disagree whether Laurie was pulled away or resisted as she walked with Officer Garcia to the vehicle. At the same time, Officer Duitscher was engaged with the passenger in Laurie's vehicle, with whom he was occupied throughout the entirety of Officer Garcia's interaction with Laurie. [ECF No. 31-3 ¶ 13].

Once they arrived at the patrol vehicle, Officer Garcia directed Laurie to "have a seat" to which she responded "no" twice. [ECF Nos. 41-1 ¶ 28; 31-2 at 75]. After that exchange, Officer Garcia pulled Laurie into the backseat where she fell flat across the backseat. [ECF No. 41-1 ¶¶ 29–31]. She claims that she hit her head on the partition dividing the backseat of the squad

---

[2] This factual background is drawn from the summary judgment record. The Court relies heavily on the officer videos which depict the events at issue. [ECF No. 31-2 at 73–77].

vehicle, which led her to suffer swelling, loss of consciousness, and persistent migraines long after the incident. [ECF No. 38-3 ¶¶ 35–36]. Laurie filed an administrative complaint with the DMPD. The DMPD substantiated the complaint, concluding that Officer Garcia used an "inappropriate" amount of force. [ECF No. 31-3 ¶ 18]. Officer Garcia was punished and received a one-day suspension as punishment for his actions. [ECF No. 35 at 3].

### B. Procedural Background

Laurie filed a petition in the Iowa District Court for Polk County on March 16, 2023. [ECF No. 1]. Shortly thereafter, the case was removed by Defendants to this Court pursuant to federal question jurisdiction. *Id.* Laurie then filed an Amended Complaint on June 6, 2023, making revisions to the case caption, modifying the named defendants, and adding a claim for battery. [ECF No. 9 at 2]. All Defendants have filed Motions for Summary Judgment, seeking judgment as a matter of law on all of Laurie's claims. [ECF Nos. 31; 32]. Plaintiff has resisted Defendants' motions. [ECF. Nos. 38–40]. The case is set for trial on October 7, 2024, and the parties have filed various pre-trial motions in preparation. [ECF Nos. 43–45].

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Paulino v. Chartis Claims, Inc.*, 774 F.3d 1161, 1163 (8th Cir. 2014). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)).

To preclude the entry of summary judgment, a plaintiff must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The evidence is viewed "in the light most favorable to the nonmoving party," which includes drawing all reasonable inferences in that party's favor. *Pedersen v. Bio-Medical Applications of Minn.,* 775 F.3d 1049, 1053 (quoting *Johnson v. Wells Fargo Bank, N.A.*, 744 F.3d 539, 541 (8th Cir. 2014)). But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson*, 477 U.S. at 255.

### B. Laurie's Claims

1) Fourth Amendment and Substantive Due Process against Officer Garcia (Counts I and II)

Laurie brings her constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a federal cause of action against anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. It has been described as a "species of tort liability" for deprivation of rights, privileges, or immunities protected by the United States Constitution. *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). She asserts claims under the Fourth and Fourteenth Amendment on the grounds that she was subject to an unreasonable seizure which was effected by the use of excessive force. The United States Supreme Court has made it clear that Section 1983 does not itself confer rights but instead acts as a vehicle for federal rights found elsewhere. In *Graham v. Connor*, the Supreme Court explained that excessive force claims at the time of arrest are analyzed under the Fourth Amendment, not a generic standard arising from a substantive due process test. 490 U.S. 386, 393–94 (1989); *see also Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 843 (1998) (confirming that a substantive due

process analysis is inappropriate if the claims are covered by the Fourth Amendment). Therefore, the Court will assess Laurie's excessive force claim under the Fourth Amendment standard.

Excessive force is considered an unreasonable seizure under the Fourth Amendment. Whether an officer used excessive force is assessed by an objective standard, "judged from the perspective of a reasonable officer on the scene." *Parrish v. Dingman*, 912 F.3d 464, 467 (8th Cir. 2019) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). To make this determination, courts may consider:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*MacKintrush v. Pulaski Cnty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021) (citing *Zubrod v. Hoch*, 907 F.3d 568, 577 (8th Cir. 2018)). While the Court must view the facts in the light most favorable to a nonmovant, there must be some *genuine* dispute of material fact for a jury. Fed. R. Civ. P. 56(a) (emphasis added). Therefore, the Court is not required to accept factual allegations as true if the video "blatantly contradict[s]" her account of what happened. *Boude v. City of Raymore, Mo.*, 855 F.3d 930, 933 (8th Cir. 2017) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Ultimately, whether force is constitutionally excessive is a question of law. *Brossart v. Janke*, 859 F.3d 616, 624 (8th Cir. 2017).

As Laurie points out in her resistance, the Court can review the footage from Officer Garcia's body camera itself and can determine from that evidence whether the use of force was objectively reasonable. Laurie grossly overstates the use of force in the pleadings and her brief in resistance to the motions. The footage depicts Laurie passively resisting Officer Garcia's directives and lawful commands as he escorts her to his police car. [ECF No. 31-2 at 75]. Laurie

repeatedly asserts that she was forcefully "slammed" into her vehicle by Officer Garcia when he handcuffed her. [ECF No. 11; 38]. The video plainly shows this is not what happened. [ECF No. 31-2 at 75]. As Laurie pulls away from Officer Garcia, he pulled her away from the driver's door and pressed her up against the vehicle so he could resume detaining her. *Id*. Any contact made with the vehicle was minor—Officer Garcia's actions cannot be accurately characterized as "slamming" her. This was a *de minimis* use of force necessary for the effectuation of arrest during which Laurie received no injuries. "[A] *de minimus* use of force or injury is insufficient to support a finding of a constitutional violation." *Cavataio v. City of Bella Villa*, 570 F.3d 1015, 1020 (8th Cir. 2009) (citation omitted).

After Officer Garcia brought Laurie over to the vehicle, he directed her to "have a seat." [ECF No. 31-2 at 75]. The video reflects that Laurie showed physical and verbal non-compliance with these lawful directions. *Id*. In fact, she responded "no" twice to his command. *Id*. At that point, Officer Garcia used force to physically place her into the vehicle. *Id*. Although Laurie was pushed into the vehicle, Laurie's description of Officer Garcia's actions as "violent" is not entirely consistent with the video. *Id*. The video does not show Officer Garcia applying force after Laurie was inside of the vehicle. *Id*.

Laurie asserts she was a non-fleeing, non-resisting suspect at the time of her arrest and, therefore, anything exceeding *de minimis* force was constitutionally unreasonable. However, the summary judgment record does not fully support this characterization of her conduct throughout her interaction with Officer Garcia. Laurie verbally resisted his commands and engaged in some passive resistance. As Defendants' expert Ron Martinelli points out in his report, at the time she was handcuffed, Laurie's knees were bent away from Officer Garcia, unambiguously demonstrating her efforts to pull away. [ECF No. 31-2 at 18]. This is clear from the video.

Additionally, the video reflects that Officer Garcia struggled to direct Laurie into the back of the police vehicle, requiring him to adjust his hands and grab her leg because of her initial resistance. *Id*. at 20–22. "When a suspect is passively resistant, somewhat more force may reasonably be required." *Wertish v. Krueger*, 433 F.3d 1062, 1066–67 (8th Cir. 2006). It was reasonable to believe that more force was necessary to physically move Laurie into the backseat of the vehicle. *See id*.

A showing that a plaintiff has suffered more than *de minimis* injury may be relevant in demonstrating the amount of force used. Laurie asserts that she sustained injuries in the form of an initial loss of consciousness, along with pressure in her head, migraines, and a swelling of her head after the incident.[3] The circumstances and inconsistencies regarding Laurie's account of her own injuries undermine her credibility in that they do not support her claims about the amount of force used on her. Specifically, Laurie was not truthful about how she sustained her injury with the medical provider who treated her after she was released from jail; her medical records do not indicate any severe injuries, noting only that she was "a victim of assault and head trauma"; and she did not follow up with a CAT scan for years, although one was recommended by the physician at the initial time of her treatment. This CAT scan occurred after this case was filed and shortly before her deposition. [ECF No. 39 at 3–4]. Even if Laurie were granted this inference that she suffered a head injury, which is not obvious, this injury alone does not support that the amount of force used by the officer was constitutionally significant. This is because the appropriate inquiry

---

[3] The court notes that while Laurie is entitled to a review of the facts in the light most favorable to her on summary judgment, there is little support for her allegation that she lost consciousness immediately after the use of force. In fact, this claim appears to be contradicted by the video evidence. [ECF Nos. 38-3 ¶ 35; 31-2 at 75]. After she was placed in the back of the police vehicle, she was immediately responsive and engaged with the officers throughout the entirety of their interactions. *Id*. Her lucidity, if not her veracity, is apparent from the audio.

is "whether the force used to effect a particular seizure is reasonable." *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) (quoting *Graham*, 490 U.S. at 396).

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (cleaned up) (citation omitted). The Fourth Amendment standard of reasonableness entails some deference for officers when making split-second decisions about the amount of force necessary "in circumstances that are tense, uncertain, and rapidly evolving." *Id*. Even assuming that Officer Garcia miscalculated how much force was reasonably needed to overcome Laurie's passive resistance, it does not mean his actions were a violation of the Fourth Amendment. Neither does the fact that an internal department investigation determined that he used "inappropriate" force substantiate a constitutional violation.

"Inappropriate" is not the standard for a Fourth Amendment violation. Use of force violates the Constitution if it is objectively unreasonable. *Samuelson v. City of New Ulm*, 455 F.3d 871, 875 (8th Cir. 2006). Officer Garcia's actions were objectively reasonable in light of the facts and circumstances he confronted, namely that Laurie had been resisting and stopped abruptly as he guided her into the back seat of the car. Given the situation, a reasonable officer would not have appreciated that the force was going to be constitutionally excessive. *See Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011) (discussing that when "an officer's particular use of force is based on a mistake of fact," the question is "whether a reasonable officer would have or should have accurately perceived that fact."). However, even if summary judgment were not appropriate on the use of force issue, Officer Garcia is entitled to qualified immunity.

A government official is entitled to qualified immunity for constitutional claims brought under Section 1983 unless their conduct violated "a clearly established constitutional or statutory

right of which a reasonable person would have known." *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). The burden is on Laurie to prove that there was a violation of a constitutional right and that right was clearly established at the time of the misconduct. *Id.*; *see also Wilson v. Lamp*, 901 F.3d 981, 986 (8th Cir. 2018) (holding that a plaintiff bears the burden of proof to overcome qualified immunity). The Supreme Court has emphasized the importance of the qualified immunity analysis because the immunity "is effectively lost if a case is erroneously permitted to go to trial." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Laurie asserts that she did not resist arrest, did not attempt to flee, and was otherwise compliant with Officer Garcia's lawful commands. Therefore, she contends that Officer Garcia's use of force violated her clearly established Fourth Amendment rights and every reasonable officer would have understood his actions to be a constitutional violation. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (explaining that for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."); *Reichle v. Howards*, 566 U.S. 658, 664 (2012) ("To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.").

As discussed above, this is not an entirely accurate description of Laurie's behavior during her interaction with officers. She cites to *Blazek v. City of Iowa City*, for support that Officer Garcia's actions were a violation of her clearly established constitutional rights. 761 F.3d 920, 921 (8th Cir. 2014). However, the factual situation in that case is distinguishable. In *Blazek*, officers were at the plaintiff's apartment for a probation check of his roommate and detained him because he was resisting and hostile during their investigation. *Id.* at 922. The plaintiff was injured during the arrest, during which he suffered a separated shoulder and an ankle fracture. *Id.* The

panel considered two discrete actions as potential uses of excessive force. First, was when officers handcuffed the plaintiff on the floor. The second action was when they pulled him up from the floor to a bed. *Id*. at 923–24. The *Blazek* court found that although the plaintiff's shoulder was injured, officers were entitled to qualified immunity for the arm twisting technique and jumping on him as they handcuffed him because it would be "unrealistic to expect a police officer, in the heat of the moment, to discern whether a particular ankle injury would result from a takedown or to plan a careful landing for the detainee's shoulder." *Id*. at 925.

In analyzing whether officers used too much force when "jerking" him off the floor and onto the bed, the court found that qualified immunity was inappropriate for the specific act. *Id*. at 925 (concluding that it was clearly established at the time of the incident "that when a person is subdued and restrained with handcuffs, a 'gratuitous and completely unnecessary act of violence' is unreasonable and violates the Fourth Amendment."). The panel considered important that the plaintiff was restrained and under control, not resisting, and that he was not detained because he was suspected of a crime. Rather, the plaintiff was merely present at the apartment during an investigation into a different person. It was also not insignificant that he sustained a serious injury. *Id*.

This is a clear contrast with the case here, where Laurie was verbally and passively resistant. Although Laurie was in handcuffs, she continued to provide passive, physical resistance, necessitating the application of some amount of force to achieve compliance. "Officers are not required to treat detainees as gently as possible." *Id*. at 926.

Likewise, similar distinctions make Laurie's reliance on *Shannon v. Koehler* and *Brown v. City of Golden Valley* untenable in demonstrating that her rights were clearly established. *Shannon v. Koehler*, 616 F.3d 855, 863 (8th Cir. 2010) (holding that under the officer was not

entitled to qualified immunity when the plaintiff was not resisting at the time force was use and he suffered severe injuries such as broken ribs and a collapsed lung); *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009) (finding that an officer who used a taser against a non-fleeing, non-resisting, non-threatening suspect who was minimally non-compliant was not entitled by qualified immunity)  For these reasons, Laurie has not demonstrated that Officer Garcia's actions were a violation of clearly established law. *See al-Kidd*, 563 U.S. at 741 (holding that law is clearly established when it is so defined "that every reasonable official would [have understood] that what he is doing violates that right.") (citation omitted).

It is clear that Officer Garcia used a measured amount of force to put Laurie in the backseat after she resisted his commands and physical directions.  The evidence shows that, at best, he overestimated how much force was necessary in that moment.  Given these circumstances, it cannot be said that every reasonable officer would have known that this initial use of force was constitutionally excessive. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  Officer Garcia's actions did not reveal him to be "plainly incompetent" nor did he "knowingly violate the law." *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Accordingly, he is entitled to qualified immunity on this claim.

2) Failure to Intervene (Count III)

Laurie's claim that the officers on scene had a duty to intervene to stop Officer Garcia's excessive use of force also fails as a matter of law.  Officers may be liable for a Fourth Amendment violation if they fail to intervene when they have "observed or had reason to know that excessive force would be or was being used, and [] the officer had both the opportunity and the means to

prevent the harm from occurring." *Mitchell v. Kirchmeier*, 28 F.4th 888, 901 (8th Cir. 2022) (citation omitted). First, there was no use of excessive force. Therefore, none of the Defendants could have observed or had reason to know that excessive force was being used. *See Robinson v. Payton*, 791 F.3d 824, 829 (8th Cir. 2015). Second, neither officer would have had the opportunity or means to intervene in any use of force. The only colorable argument for excessive use of force is when she is placed into the back of the patrol vehicle. That interaction takes place in a matter of seconds, at which point Officer Duitscher was dealing with the other individual on scene and Officer Hastie was in his vehicle across the parking lot. [ECF Nos. 31-3 ¶ 13; 17]. Nevertheless, no excessive force was used, so there was no constitutionally-imposed duty to intervene.

### 3) *Monell* Claims (Counts IV and V)

Municipalities are responsible only for their own illegal acts and cannot be held vicariously liable under Section 1983 for their employees' actions. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Municipal governments can, however, be held liable when "execution of a government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipal liability for a Section 1983 violation requires: "the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 699 (8th Cir. 2016) (cleaned up) (citations omitted). There must be a "[d]eliberate indifference to or tacit authorization of such conduct . . . after notice to the officials" for a *Monell* claim to lie. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

There was no excessive use of force in this case so there was no violation for which the City could be responsible. *See Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018) (holding that "absent a constitutional violation by a city employee, there can be no § 1983 or

*Monell* liability for the City."). Additionally, the record shows a policy which affirmatively prohibits such conduct, not the absence of one. When Laurie filed her administrative complaint to the city, it launched an investigation, before concluding that Officer Garcia had violated the department's policies, and punished him with a one-day suspension. [ECF No. 35] (sealed). This action by Defendants cannot constitute the "deliberate indifference" or "tacit authorization" required. *See Mettler,* 165 F.3d 1197, 1204 (8th Cir. 1999). There are no grounds for Laurie's *Monell* claim and Defendants are entitled to judgment as a matter of law on this claim.

4) Iowa Constitutional Claims (Counts VI and VII)

Laurie asserts violations of the Iowa Constitution, typically referred to as *Godfrey* claims, after the 2017 decision by the Iowa Supreme Court. *Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017) (recognizing a direct cause of action for money damages against government officials under the Iowa Constitution). At the time that she filed her petition in state court, these claims were actionable directly under the Iowa Constitution. However, in May 2023, the Iowa Supreme Court overruled *Godfrey*, concluding that a cause of action under the Iowa Constitution is no longer available. *Burnett v. Smith*, 990 N.W.2d 289, 307 (Iowa 2023). After Defendants removed this case to federal court, Laurie filed an Amended Complaint on June 6, 2023. [ECF No. 11]. This would have been the appropriate time to dismiss these counts. However, the Amended Complaint repleaded these same claims notwithstanding the lack of an available cause of action. In her brief in resistance to summary judgment, Laurie does not back down from her pursuit of these claims despite the lack of support in the law. She argues that Officer Garcia "waived" his argument that a cause of action no longer exists by arguing the merits of the now-extinct direct claims under the

Iowa Constitution.[4]  Despite Laurie's legally-unsupported contentions to the contrary, a claim does not become actionable merely because a defendant argues it on the merits when such a claim is not supported by the law.  *See Galanakis v. City of Newton, Iowa*, No. 4:23-cv-00044-SHL-SBJ, 2024 WL 606235, at *12 (S.D. Iowa Feb. 8, 2024).  It is well-established that a defense of failure to state a claim can be made at any time until trial because a party must have a valid cause of action.  Fed. R. Civ. P. 12(h)(2).  For these reasons, there can be no waiver which would permit the consideration of Plaintiff's claims which are unsupported by Iowa law.  Continued maintenance of these claims is a waste of time for all involved in this case.

     5)  Negligence, *Respondeat Superior*, and Battery (Counts VIII-XI)

Laurie next brings claims for negligence against Officers Garcia, Duitscher, and Hastie under Iowa state law for excessive use of force and failure to intervene.  She also asserts that the City of Des Moines is liable under a theory of *respondent superior* for the officers' actions.

Under Iowa law, "[a] peace officer, while making a lawful arrest, is justified in the use of any force which the peace officer reasonably believes to be necessary to effect the arrest."  Iowa Code § 804.8.  For the reasons previously discussed, Officer Garcia used force which he reasonably believed to be necessary to arrest Laurie and secure her in the patrol vehicle.[5]  *See Lawyer v. City of Council Bluffs, Iowa,* 240 F. Supp. 2d 941, 955 (S.D. Iowa 2002) (stating that Iowa Code Section 804.8 applies a near-identical standard as claims for excessive force under the United States Constitution); *see also Klum Est. of Klum v. City of Davenport*, No. 3:23-CV-00043-RGE-WPK,

---

[4] Further discussion of Plaintiff's conduct regarding this frivolous legal claim can be found in the simultaneously filed Order to Show Cause.

[5] Laurie's claim for battery necessarily fails because Officer Garcia's use of force was objectively reasonable and as such, he was justified in using the force he believed necessary to effectuate arrest.  *See Lawyer*, 240 F. Supp. 2d 941 at 955; Iowa Code § 804.8.

2024 WL 2880640, at *14 (S.D. Iowa May 30, 2024) (holding that a Fourth Amendment finding of objective reasonableness necessitates a finding that "force was not negligent under Iowa law"). Officer Garcia used force he reasonably believed to be necessary.[6] Without an underlying breach by Officer Garcia, Officers Hastie and Duitscher had no duty to intervene. Additionally, the City cannot be held vicariously liable in the absence of tortious conduct. *See Parrish v. Dingman*, 912 F.3d 464, 469 (8th Cir. 2019) (holding that an employer will not be liable under *respondeat superior* unless the employee is liable.)

### III. CONCLUSION

For the reasons discussed above, the Defendants' Motions for Summary Judgment are GRANTED. [ECF Nos. 31; 32]. The parties' motions in limine and Defendants' motion to bifurcate are MOOT. [ECF Nos. 43–45].

IT IS SO ORDERED.

Dated this 22nd day of August, 2024

                                                  STEPHANIE M. ROSE, CHIEF JUDGE
                                                  UNITED STATES DISTRICT COURT

---

[6] Officer Garcia's exercise of due care in the execution of his duties would also exempt the City from liability for the tort claims. Iowa Code § 670.4. For the same reasons Officer Garcia is entitled to qualified immunity under the federal standard, he is entitled to qualified immunity here. There is no liability if it was not clearly established that the use of force was negligent at the time of the incident. Iowa Code § 670.4A; *see also Est. of Klum,* 2024 WL 2880640, at *14.